UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| UNITED STATES OF AMERICA, Plaintiff, vs. NATHAN REUER, Defendant. | CR. 19-50022-JLV<br><br>ORDER |
|---|---|

**INTRODUCTION**

Defendant Nathan Reuer was brought into federal custody on a writ of habeas corpus ad prosequendum on January 24, 2019. (Docket 5). The writ was supported by a criminal complaint and affidavit, alleging defendant imported methamphetamine, fentanyl and heroin. (Docket 1). Defendant made his initial appearance before Magistrate Judge Daneta Wollmann on January 25, where she temporarily ordered him detained. (Dockets 7 & 10). The magistrate judge held a detention hearing on February 4 pursuant to the Bail Reform Act, 18 U.S.C. § 3141 *et seq.* (Docket 20). At the conclusion of the hearing, the magistrate judge found a serious risk defendant would endanger the safety of the community and ordered him detained pending trial. (Docket 22). On February 5, a grand jury indicted defendant on three counts of importing controlled substances (methamphetamine, fentanyl, and a mixture of heroin and fentanyl) and one count of possession with intent to distribute heroin. (Docket

23). Defendant now appeals the magistrate judge's detention order to this court. For the reasons given below, the court denies defendant's appeal.[1]

**ANALYSIS**

**I.      Facts**

The factual recitation given here is based on the allegations in the affidavit supporting the criminal complaint and the evidence presented before the magistrate judge at defendant's detention hearing. The court well understands that new evidence may emerge as the case progresses. This factual recitation is necessarily incomplete because of the early stage of the case. It does not bind the magistrate judge or the court in any factfinding endeavors that may be undertaken in response to future motions.

Department of Homeland Security Special Agent Nicholas Saroff ("SA Saroff") was informed by Customs and Border Patrol ("CBP") in Detroit, Michigan, that numerous small packages from Canada and China were being shipped to defendant at his home in Rapid City, South Dakota. (Docket 1-1 at p. 2). The packages raised suspicion because they appeared to fit into a larger trend of small, unobtrusive packages containing controlled substances, including methamphetamine and fentanyl, being shipped from fictitious addresses in Canada and China. Id. In late December of 2018 and early

---

[1] Defendant requested oral argument because of his age, lack of criminal history, "and a complicated set of facts that may involve many months of investigation and litigation." (Docket 25 at p. 2). The evidence before the magistrate judge and the parties' briefing is sufficient for the court to resolve this appeal. The court denies defendant's request for oral argument.

January of 2019, four packages addressed to defendant were intercepted. Id. at pp. 3-6. Three of the four packages contained substances which tested positive for fentanyl. Id. The fourth contained a substance which tested positive for methamphetamine. Id. at p. 4.

SA Saroff obtained a search warrant for defendant's person, vehicle, and common areas of his residence, along with his bedroom or personal spaces. Id. at p. 6; Docket 27 at p. 4. Defendant lived with his parents and the search warrant did not permit officers to search portions of the home primarily used by defendant's parents. Officers executed the search on January 23 and recovered at least 800 grams of synthetic substances similar to MDMA (also known as ecstasy) and bath salts. (Docket 27 at pp. 6-8). At the detention hearing, SA Saroff testified the chemist testing these synthetic substances found "they had the markers of . . . illicit and illegal substances." Id. at p. 25. Officers also recovered a scale, unknown pills, steroid-like substances, needles, droppers containing unknown liquids, tubes for snorting substances, mailing boxes, and labels. Id. at pp. 6-9. Finally, they observed five one-kilogram packages of kratom, a legal substance that defendant's mother believed defendant used as a bodybuilding supplement.[2] Id. at pp. 25-26. The urine sample taken from defendant tested positive for methamphetamine, opiates and THC. SA Saroff did not specify if the test showed use of a particular opioid.

---

[2]In his affidavit, SA Saroff notes kratom "can cause effects similar to both opioids and stimulants." (Docket 1-1 at p. 7). He states kratom is sometimes used "as an herbal alternative to medical treatment in attempts to control withdrawal symptoms and cravings caused by addiction to opioids[.]" Id.

3

In one of defendant's rooms, officers found an active computer with a Tor browser open. SA Saroff described a Tor browser as a "gateway to the dark web" that "allows a user to anonymously utilize the internet to obtain goods or services . . . for nefarious purposes."[3] Id. at p. 11; Docket 1-1 at p. 6. Officers also discovered evidence of four Bitcoin accounts on the computer.[4] (Docket 27 at p. 11). Following the search, officers continued to intercept packages sent to defendant. Id. at p. 13. The latest item intercepted prior to the detention hearing was a letter from Canada containing heroin laced with fentanyl seized on February 1. Id. at p. 10.

The United States Probation Office recommended defendant be released on his own recognizance with conditions of release. (Docket 6 at pp. 3-4). The proposed conditions of release largely concerned substance use and treatment. Id. at p. 4. The conditions did not concern computer or mail use. Defendant asks the court to vacate the detention order and adopt the Probation Office's recommended conditions of release. (Docket 28 at pp. 8-9). He also notes the

---

[3]"The Onion Router ("Tor") network exists to provide anonymity to Internet users by masking user data, hiding information by funneling it through a series of interconnected computers. . . . Although Tor's intended users include whistleblowers, journalists, law enforcement personnel, activists, and privacy-minded consumers, users with more nefarious motives have used Tor's anonymity capabilities for criminal purposes." United States v. Horton, 863 F.3d 1041, 1045 (8th Cir. 2017).

[4]Bitcoin is "an anonymous, decentralized form of electronic currency that exists entirely on the Internet and not in any physical form." United States v. Murgio, 209 F. Supp. 3d 698, 704 (S.D.N.Y. 2016) (citing Kevin V. Tu & Michael W. Meredith, Rethinking Virtual Currency Regulation in the Bitcoin Age, 90 Wash L. Rev. 271, 277 (2015)).

court can fashion conditions of release involving a ban on internet use or the use of an internet monitoring program. (Docket 31 at pp. 4-5). Defendant proposes to reside with his parents. (Docket 25 at p. 2). His parents submitted affidavits stating they would allow defendant to reside with them, had no criminal history and would report violations of any release conditions. (Dockets 18 & 19).

## II. Discussion

### A. Legal standards

"If a person is ordered detained by a magistrate judge . . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b). A district court's review of a detention order entered by a magistrate judge "should proceed de novo." United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985) (en banc).

> To engage in a meaningful de novo review, the district court must have available the options open to the magistrate. . . . Only after determining that release upon personal recognizance or an unsecured appearance bond will not reasonably assure appearance or will endanger the safety of others may the judicial officer then proceed to consider [conditions of release].

Id. at 1482.

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) [or] the

5

>Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.)[.]

18 U.S.C. § 3142(e)(3). "In a presumption case . . . a defendant bears a limited burden of production - not a burden of persuasion - to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003) (quoting United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id.

If the presumption is rebutted, "[a] defendant may be detained before trial '[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no condition or set of conditions . . . will reasonably assure the defendant's appearance . . . .' " Id. (quoting United States v. Kisling, 334 F.3d 734, 735 (8th Cir. 2003)).

> In determining if release conditions exist that will reasonably assure the appearance of a defendant at trial and the safety of the community, the court considers the following: (1) the nature and circumstances of the crime; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including mental condition, family ties, employment, community ties, and past conduct; and (4) the seriousness of the danger to the community or to an individual.

Id. (citing 18 U.S.C. § 3142(g)).

**B.     Detention presumption**

Defendant is charged with violating both the Controlled Substances Act and the Controlled Substances Import and Export Act.  (Docket 23).  Under the Controlled Substances Act, he is charged with possessing a detectable amount of heroin with the intent to distribute that substance.  <u>Id.</u>  That charge carries a maximum penalty of twenty years of incarceration.  21 U.S.C. § 841(b)(1)(C).  Under the Controlled Substances Import and Export Act, defendant is charged with importing detectable amounts of fentanyl, methamphetamine, and a mixture of heroin and fentanyl.  Those charges carry a maximum penalty of twenty years of incarceration.  21 U.S.C. § 960(b)(3).  The magistrate judge found probable cause to believe defendant committed these offenses when she signed the criminal complaint charging the offenses.  (Docket 1).  Based on the factual recitation given above, <u>see</u> <u>supra</u> Section I, the court likewise finds probable cause to believe defendant committed these offenses.  Based on this finding, the court must "presume[] that no condition or combination of conditions will reasonably assure the appearance of [defendant] as required and the safety of the community[.]"[5]  18 U.S.C. § 3142(e)(3).

**C.     Presumption rebuttal**

In determining whether defendant produced sufficient evidence to rebut the presumption of detention, the court looks to the Bail Reform Act factors.  <u>See</u> <u>United States v. Cantu</u>, 935 F.2d 950, 951 (8th Cir. 1991) (affirming district

---

[5]The parties agree a presumption of detention applies to this case. (Dockets 28 at p. 6 & 30 at p. 2).

court detention order using Bail Reform Act factors to evaluate whether defendant rebutted the detention presumption) (citing 18 U.S.C. § 3142(g)).

### 1. Nature of offense and danger to community

The nature of the offense and the danger it poses to the local community weigh heavily against a finding that the detention presumption has been rebutted. The government argued, and the magistrate judge agreed, that importing fentanyl posed a serious danger to the local community. (Docket 27 at pp. 36-37, 53). SA Saroff testified defendant imported approximately four grams of fentanyl. Id. at p. 23. Defendant also allegedly imported some amount of heroin laced with fentanyl, with that mixture arriving at his home after his arrest. Id. at p. 10.

Defendant argues the United States Sentencing Commission assigns fentanyl only 25 percent more weight than methamphetamine in calculating sentencing ranges for defendants convicted of drug importation. (Docket 28 at pp. 5-6) (citing U.S.S.G. § 2D1.1 n.8 (D)). He contends the four grams of fentanyl is equivalent to five grams of methamphetamine, which is "not a huge amount of the drug by addicts' standards." Id. at p. 9. This facile comparison has no legal force and is wholly contradicted by the extremely dangerous nature of fentanyl. A lethal dose of fentanyl is approximately two to three milligrams. (Docket 1-1 at p. 6); United States v. Wilmore, 282 F. Supp. 3d 937, 943 n.35 (S.D.W.V. 2017). Four grams of fentanyl is equivalent to between 1,333 and 2,000 lethal doses. By any standard, four grams of fentanyl is an extraordinarily dangerous amount of a particularly lethal drug.

For similar reasons, the court is troubled by evidence defendant was importing heroin laced with fentanyl.

> [M]any people who use fentanyl and other synthetic opioids are unaware that they are doing so. Fentanyl is cheap, easy to produce, and extremely potent. Thus, the nation's illicit drug supply, especially its heroin, is increasingly laced with synthetic opioids, such as fentanyl. For this reason, heroin users who fail to question what they are buying or who unwittingly, and mistakenly, trust their dealers never know which hit will be their last. They are playing an addict's game of Russian roulette with the dealers supplying the loaded guns.

Wilmore, 282 F. Supp. 3d at 942 (footnote citations omitted). Compounding the danger of importing heroin laced with fentanyl is the possibility defendant may have been mixing controlled substances with fentanyl himself. SA Saroff testified defendant appeared to be "combining multiple substances and then selling them." (Docket 27 at p. 27.) South Dakota is experiencing a growing rate of opioid overdoses, some resulting in death, related to the importation of fentanyl and its mixing with other controlled substances, such as heroin. Bart Pfankuch, Opioid fentanyl causing spike in overdoses in South Dakota, Argus Leader (Sioux Falls), June 15, 2018 (describing, *inter alia*, deaths in Lawrence County, South Dakota, caused by fentanyl analogues mixed with heroin).[6] Defendant does not provide any evidence tending to mitigate the danger posed by his alleged participation in these activities.

---

[6]Available at https://www.argusleader.com/story/news/crime/2018/06/13/opioid-fentanyl-overdose-south-dakota-drugs/699099002/ (last accessed Feb. 26, 2019).

### 2. Weight of evidence and characteristics of defendant

At this preliminary stage of the case, the court finds the current evidence against defendant weighs in favor of detention. As described above, see supra Section I, the facts derived from SA Saroff's investigation demonstrate a substantial likelihood that defendant was importing very dangerous controlled substances.

Defendant relies on his personal characteristics to rebut the presumption of detention. He adduces evidence of his educational achievements, lack of a criminal history, lack of a history of violence or weapons possession, and a strong family support network. (Docket 28 at 7-8). These characteristics, while laudable, do not address whether he poses a danger to the community in light of the evidence against him.

In fact, as the magistrate judge noted, some of these characteristics bolster evidence of the danger defendant poses. (Docket 27 at pp. 54-55). The fact defendant has an engineering degree coupled with the evidence of his use of sophisticated internet techniques which can avoid law enforcement detection suggests he may pose a larger threat to the community than other drug defendants. (Docket 30 at p. 7) ("[T]here is no way to ensure the defendant will not access the dark web and obtain more substances."). Furthermore, the record suggests defendant's parents either completely failed to notice obvious signs of drug activity that would have been apparent had they simply opened the door to defendant's room or were willfully blind. See Detention Hearing Exs. 1-3 (photos of room used by defendant, showing powders, droppers, pipes, and baggies in plain view on defendant's desk). A showing of strong family ties

10

cannot overcome the detention presumption where, as here, there is evidence family members were passively enabling the offense.

## IV. Conclusion

The evidence before the court shows defendant's alleged importation of fentanyl and fentanyl-laced heroin pose a clear danger to the community. Given defendant's educational background, technological sophistication, and apparent ability to deceive his family, the court finds the presumption of detention is well-placed in this case because there are no conditions of release that could mitigate the danger his activities pose to the community. Defendant's reliance on his personal characteristics is misplaced in this context. The court concludes defendant has not rebutted the presumption of detention as to the danger he poses to the community.[7]

**ORDER**

For the reasons given above it is

ORDERED that defendant's appeal of the magistrate judge's detention order (Docket 25) is denied.

IT IS FURTHER ORDERED that the magistrate judge's detention order (Docket 22) is affirmed.

Dated March 4, 2019.

BY THE COURT:
/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

---

[7]The magistrate judge found defendant was not a flight risk. (Docket 27 at p. 52). The parties do not contest that finding. (Dockets 28 at p. 7 n.3 & 30 at p. 6).

11